IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JOSE LUIS GARCIA, et al.**, | Case No. 3:12-cv-01930-SI |
| Plaintiffs, | **OPINION AND ORDER** |
| v. | |
| **LANCE LUPTON**, | |
| Defendant. | |

Jack Oswald and Virginia G. Mitchell, OSWALD & MITCHELL, 12100 S.W. Allen Boulevard, Beaverton, OR 97005. Of Attorneys for Plaintiffs.

Lance Lupton, 2338 Butterfield Trail, Bend, Oregon 97702. *Pro se*.

**Michael H. Simon, District Judge.**

Fifteen former employees ("Plaintiffs") bring this suit against their former employer,

Lance Lupton ("Lupton").[1] Plaintiffs allege claims for violations of the Fair Labor Standards

Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA"); the Montana Wage Protection Act, Mont. Code

---

[1] Plaintiffs' complaint brings claims against three defendants: Pacwest Contracting LLC, Justin Goodman, and Lupton. Dkt. 1. The Court entered default against Pacwest Contracting LLC on April 3, 2015 for failure to comply with the Court's June 30, 2014 Order (Dkt. 30) requiring it to appear by counsel in this action. Dkt. 34. Additionally, Plaintiffs did not file a proof of service on Justin Goodman. Plaintiffs' complaint was filed on October 26, 2012, well over 120 days ago. Accordingly, the Court dismisses Plaintiffs' claims against Justin Goodman without prejudice pursuant to Fed. R. Civ. P. 4(m).

Ann. ("MCA") § 39-3-101, *et seq.*; and breach of contract.[2] Lupton alleges two counterclaims

against Plaintiff Jose Luis Garcia ("Garcia") for conversion and breach of contract. Plaintiffs

move for summary judgment on all claims. For the reasons set forth below, Plaintiffs' motion for

summary judgment is granted in part and denied in part.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine

dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view

the evidence in the light most favorable to the non-movant and draw all reasonable inferences in

the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th

Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the

drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling

on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of

the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252,

255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for

the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith

Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

## BACKGROUND

Pacwest Contracting LLC is a construction company with its principal place of business

in Bend, Oregon. Lupton and Justin Goodman ("Goodman") managed the operations of Pacwest.

---

[2] Plaintiffs' breach of contract claim is brought against Pacwest on behalf of Garcia only. Dkt. 1 at 5.

In December 2011,[3] Defendants hired Garcia to work on the construction of a hotel in Glendive,

Montana.[4] Defendants instructed Garcia to hire additional employees on behalf of Defendants to

help Garcia with construction. Garcia hired the remaining Plaintiffs, all of whom were approved

as employees by Defendants. Lupton negotiated and finalized a labor agreement with Plaintiffs.

Before Plaintiffs began construction, Lupton gave Garcia a check for approximately $7,640 to

pay Plaintiffs initially, and Garcia then divided the check among Plaintiffs.[5] Plaintiffs were to

have hourly wages that varied from $14.00 to $25.00.[6] Lupton agreed that Plaintiffs would use

Garcia's tools for construction and in return, Lupton would pay Garcia a monthly rental fee.

At the beginning of their third week of work, Plaintiffs made their first request for

payment of wages. Garcia give a list of each Plaintiff's hours worked to Justin Goodman

("Goodman"), the on-site supervisor who monitored Plaintiffs' work and time. Goodman told

Garcia he would give that information to Lupton, who served as the long-distance manager of the

---

[3] Garcia's declaration states that he was hired in late December 2012. Dkt. 38 ¶ 2.
Plaintiffs' records, however, demonstrate that they worked on the construction project in
Montana in January 2012. Dkt. 38 at 5-19. Additionally, the complaint in this case was filed in
October 2012. Dkt. 1. Thus, the Court considers Garcia's statement that he was hired in late
December 2012 to be a scrivener's error.

[4] Plaintiffs do not specify whether Lupton, Justin Goodman, or Pacwest was responsible
for hiring Garcia. Dkt. 38 ¶ 2 (Declaration of Jose Luis Garcia) ("I was hired by defendants to
work on defendants' project constructing the Astoria Hotel in Glendive, Montana.").

[5] The check was divided as follows: Jose Luis Garcia, $0.00; Carlos Vasquez, $700.00;
Julio Garfias, $600.00; Gullibaldo Garfias, $650.00; Francisco Real, $200.00; Oriale Bernal,
$400.00; Julio Frutos, $600.00; Oscar Cornejo, $620.00; Jesus Enrique Lopez, $520.00; Ricardo
Hernandez, $400.00; Josaphat Sanchez, $700.00; Pedro Molina, $700.00; Christian Ramirez,
$400.00; Hugo Molina, $500.00; and Oliverio Cuenca, $650.00. Dkt. 38 ¶ 3.

[6] The hourly wages were as follows: Jose Luis Garcia, $25.00; Carlos Vasquez, $16.00;
Julio Garfias, $16.00; Gullibaldo Garfias, $20.00; Francisco Real, $16.00; Oriale Bernal, $20.00;
Julio Frutos, $16.00; Oscar Cornejo, $20.00; Jesus Enrique Lopez, $18.00; Ricardo Hernandez,
$20.00; Josaphat Sanchez, $16.00; Pedro Molina, $18.00; Christian Ramirez, $18.00; Hugo
Molina, $16.00; and Oliverio Cuenca, $14.00. Dkt. 38 ¶ 2.

construction project. A day or two later, Garcia spoke with Lupton on the phone and told Lupton

that the workers still needed to get paid. Lupton told Garcia that the funds would not be available

for a few days. Garcia called Lupton two or three days later, and Lupton told him that the funds

were still not available and that he could not pay them yet. Garcia called Lupton a third time a

day or two after that, and Lupton told Garcia to wait one more day. Lupton deposited $100 into

Garcia's bank account to pay for food for Plaintiffs. At this time, Plaintiffs got word that Pacwest

was not going to be paid for the construction job. It is unclear in the record from whom Plaintiffs

received this information. Plaintiffs decided to stop working because they were not being paid

and went home.[7] Garcia never received payment from Lupton for the tool rentals.[8]

## DISCUSSION

Plaintiffs bring two claims against Lupton: (1) failure to pay minimum wages, in

violation of the FLSA, 29 U.S.C. §§ 206(a)(1)(C), 207(a)(1), and 216(b) ("First Claim");[9] and

---

[7] By the time Plaintiffs stopped working, each Plaintiff had worked the following total hours: Jose Luis Garcia, 144 hours, including 42 hours of overtime; Carlos Vasquez, 88 hours, including 24.5 hours of overtime; Julio Garfias, 135.2 hours, including 32.8 hours of overtime; Gullibaldo Garfias, 137.5 hours, including 35 hours of overtime; Francisco Real, 135 hours, including 32.5 hours of overtime; Oriale Bernal, 111.5 hours, including 9 hours of overtime; Julio Frutos, 145 hours, including 33 hours of overtime; Oscar Cornejo, 137.5 hours, including 35 hours of overtime; Jesus Enrique Lopez, 140.5 hours, including 28.5 hours of overtime; Ricardo Hernandez, 111.5 hours, including 17.5 hours of overtime; Josaphat Sanchez, 129.5 hours, including 26.5 hours of overtime; Pedro Molina, 135.5 hours, including 33 hours of overtime; Christian Ramirez, 121 hours, including 17.5 hours of overtime; Hugo Molina, 125 hours, including 22.5 hours of overtime; and Oliverio Cuenca, 135.5 hours, including 33 hours of overtime. Dkt. 38 ¶ 5.

[8] The total rental fee was $1,060.00. Dkt. 38 ¶ 6.

[9] Although Plaintiffs' First Claim is labeled as a claim for "Failure to Pay Overtime Wages" under 29 U.S.C. § 207(a)(1), the relief Plaintiffs seek in their First Claim corresponds to both minimum wages and overtime wages. Dkt. 1 at 2-3; *see also* Dkt. 39 at 4-18 (providing calculations for wages owed to Plaintiffs). Thus, the Court finds that Plaintiffs' allegations in their First Claim "plausibly suggest an entitlement to relief" under both 29 U.S.C. § 206(a)(1)(C) and 29 U.S.C. § 207(a)(1) and were sufficient to give Lupton "fair notice" of Plaintiffs' claims

(2) failure to pay actual wages, in violation of the Montana Wage Protection Act, MCA §§ 39-3-204, 39-3-205, 39-3-405, and 39-3-206 ("Second Claim"). Additionally, Plaintiffs bring a common law breach of contract claim against Pacwest on behalf of Garcia ("Third Claim"). Lupton asserts counterclaims for conversion and breach of contract against Garcia. Plaintiffs move for summary judgment on all claims.

Lupton did not respond to Plaintiffs' motion for summary judgment. A court may not, however, grant summary judgment by default. *See Heinemann v. Satterberg*, 731 F.3d 914, 916-17 (9th Cir. 2013). When a party fails to respond to a fact asserted by the movant, a court may:

> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting
> materials—including the facts considered undisputed—show that
> the movant is entitled to it; or (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). This rule was amended in 2010 to incorporate the "deemed admitted" practice of many courts—where a party fails to respond to an asserted fact, that fact may be "deemed admitted" (considered as undisputed). *See Heinemann*, 731 F.3d at 917.

Considering a fact as undisputed, however, does not mean summary judgment may automatically be granted. A court must still determine, considering the facts the court has found undisputed for want of a response and those that cannot be genuinely disputed despite a proper response, the legal consequences and proper inferences to be drawn from those facts. *Id.* (quoting Fed. R. Civ. P. 56 Advisory Committee Notes (2010)). Accordingly, the Court considers the parties' claims and counterclaims in light of the undisputed facts.

---

for failure to pay minimum and overtime wages. *See Starr v. Bacca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

## A.  Plaintiffs' First Claim

Under the FLSA, every employer is required to pay to each of his or her employees not less than $7.25 an hour. 29 U.S.C. § 206(a)(1)(C). Additionally, under the FLSA, employees who work more than 40 hours per week are entitled to overtime compensation at a rate of at least 1.5 times their regular rate of pay. *Id.* § 207(a)(1). If the employee is not paid the statutory wage, FLSA provides a private cause of action for that employee against his or her employer for the recovery of unpaid wages and an equal amount of liquated damages if the failure to pay wages is found to be willful. *Id.* § 216(b), 260. A claim under the FLSA for unpaid wages has three elements: (1) the plaintiff was employed by the defendant; (2) either the plaintiff was engaged in commerce, or was employed in an enterprise engaged in commerce; and (3) the plaintiff performed work for which he or she was under-compensated. *See id.* §§ 206(a), 207(a)(1).

### 1.  Whether Lupton employed Plaintiffs

"The FLSA broadly defines the 'employer-employee relationship[s]' subject to its reach." *Torrez-Lopez v. May*, 111 F.3d 633, 638 (9th Cir. 1997) (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728 (1947)). The FLSA defines "Employ" as "to suffer or permit to work," and an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(g), (d). Additionally, "[t]he FLSA's definition of employee has been called the 'broadest definition that has ever been included in any one act.'" *Torres-Lopez*, 111 F.3d at 638 (quoting *United States v. Rosenwasser*, 323 U.S. 360, 363 n.3 (1945)).

Garcia states that Plaintiffs were employees of Defendants, which includes Lupton. Lupton negotiated and finalized Plaintiffs' labor agreement for the construction job, was the long distance manager of the project, and was in charge of paying Plaintiffs their wages. Additionally, Lupton managed the operations of Pacwest and exercised control over the nature and structure of

PAGE 6 – OPINION AND ORDER

the work relationship between Pacwest and Plaintiffs. Dkt. 12 at 2; Dkt. 39 at 23. The Court

considers these facts undisputed for purposes of this unopposed summary judgment motion. Fed.

R. Civ. P. 56(e)(2). The Court finds, based upon these undisputed facts and the "'broad[]

definition'" of "employee" under the FLSA, that Plaintiffs were Lupton's employees. *See*

*Torres-Lopez*, 111 F.3d at 638 (quotation marks omitted).

> **2.   Whether Plaintiffs were employed in an enterprise engaged in commerce**

FLSA applies to employees either individually, if they are "engaged in commerce or in

the production of goods for commerce," or through their employer, if they are "employed in an

enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C.

§ 207(a)(1). Plaintiffs assert that they were "employed in an enterprise engaged in commerce,"

and are thus covered by FLSA's overtime rules. *See id.*

The FLSA defines "enterprise" as "the related activities performed (either through

unified operation or common control) by any person or persons for a common business

purpose. . . ." *Id.* § 203(r)(1). An enterprise qualifies as an "enterprise engaged in commerce or

in the production of goods for commerce" if it "has employees engaged in commerce . . . and is

an enterprise whose annual gross volume of sales made or business done is not less than

$500,000 . . . ." *Id.* § 203(s)(1). The FLSA defines "commerce" as "trade, commerce,

transportation, transmission, or communication among the several States or between any State

and any place outside thereof." *Id.* § 203(b).

Plaintiffs have presented evidence that they were "employed in an enterprise engaged in

commerce." Plaintiffs were employed on a construction project in Montana. Lupton is an Oregon

resident and served as the long distance manager during the time that Plaintiffs worked on the

Montana project. Dkt. 39 at 22-23. Additionally, Pacwest has admitted that it had annual gross

revenues greater than $500,000 at all material times. Dkt. 12 ¶ 8. Thus, Plaintiffs have

PAGE 7 – OPINION AND ORDER

established that they were "employed in an enterprise engaged in commerce" as required for

recovery under the FLSA. *See* 29 U.S.C. § 207(a)(1).

### 3.  Whether Plaintiffs worked unpaid wages and overtime

"An employee seeking to recover unpaid minimum wages or overtime under the FLSA

'has the burden of proving that he performed work for which he was not properly

compensated.'" *Brock v. Seto*, 790 F.2d 1446, 1447-48 (9th Cir. 1986) (quoting *Anderson v. Mt.*

*Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)). When the employer's records are inaccurate or

inadequate, "'an employee has carried out his burden if he proves that he has in fact performed

work for which he was improperly compensated and if he produces sufficient evidence to show

the amount and extent of that work *as a matter of a just and reasonable inference.*'" *Id.* at 1448

(quoting *Anderson*, 328 U.S. at 687) (emphasis in original).

Lupton has not produced any evidence regarding employment records. Plaintiffs have

presented evidence concerning the hours they worked, including overtime hours, and the amount

for which they were improperly compensated. Plaintiffs' evidence includes calendars showing

the days and hours that each Plaintiff worked on the construction project. The Court considers

these facts undisputed for purposes of this unopposed summary judgment motion. Fed. R. Civ.

P. 56(e)(2). The Court finds that Plaintiffs have carried their burden of proving that they

performed work for which they were not properly compensated. Thus, the Court grants

Plaintiffs' motion for summary judgment on their First Claim for violations of 29 U.S.C.

§§ 206(a)(1)(C), and 207(a)(1). Plaintiffs may recover for the amount of their unpaid wages

under 29 U.S.C. §§ 206(a)(1)(C), and 207(a)(1). *See* 29 U.S.C. § 216(b) ("An employer who

violates the provisions of section 206 or 207 of this title shall be liable to the . . . employees

affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation,

as the case may be . . . .").

PAGE 8 – OPINION AND ORDER

#### 4.  Whether Plaintiffs are entitled to liquidated damages

An employer who fails to pay wages due under the FLSA is liable not only for the amount of the unpaid wages, but also "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). An employer can avoid liquidated damages, however, by showing that he or she acted in good faith in violating the FLSA. *Id.* § 260 (2012). Lupton has not presented any evidence that he acted in good faith in failing to pay Plaintiffs overtime wages. It is the employer's burden to show that he or she subjectively intended to honestly obey the FLSA and had reasonable grounds to believe that his or her conduct complied with the FLSA. *Local 246 Utility Workers of America v. S. Cal. Edison*, 83 F.3d 292, 298 (9th Cir. 1996). Lupton has not met his burden. *See id.* at 297 ("If the employer fails to carry that burden, liquidated damages are mandatory."). Thus, the Court finds that Plaintiffs may recover liquidated damages under 29 U.S.C. § 216(b).

### B.  Plaintiffs' Second Claim

The Montana Wage Protection Act "guarantees Montana's employees fair wages and overtime wages . . . and permits employees to recover unpaid wages in the form of liquidated damages." *Babinecz v. Mont. Highway Patrol*, 68 P.3d 715, 718 (Mont. 2003). An employee is permitted to recover all unpaid wages and penalties by filing a complaint within 180 days of default or delay in the payment of wages. MCA § 39-3-207; *see Harrell v. Farmers Educ. Co-Cop Union of Am., Mont. Div.*, 314 P.3d 920, 928 (Mont. 2013) (clarifying that the 180-day statute of limitations applies to both wage claims and penalty claims). "The claim accrues—and the clock begins to run—on the last date on which the employer fails to pay." *Id.* When an employee becomes separated from their employment, all of their wages become due and payable on their next regular payday or 15 days from the date of separation from employment, whichever occurs first. MCA § 39-3-205.

PAGE 9 – OPINION AND ORDER

Plaintiffs' records demonstrate that the last day any of them worked on the construction project in Montana was January 24, 2012. Dkt. 38 at 5-19. Plaintiffs have not presented evidence concerning the dates of their regular paydays. Fifteen days from January 24, 2012, the date of their separation from employment, is February 8, 2012. One hundred eighty days from February 8, 2012 is August 6, 2012. The complaint in this case was filed on October 26, 2012. Dkt. 1. Thus, Plaintiffs' claim for unpaid wages under the Montana Wage Protection Act is time-barred. *See also Harrell*, 314 P.3d at 929 (applying the 180-day statute of limitations to a plaintiff's wage claims and finding that the claims were barred). Accordingly, Plaintiffs' motion for summary judgment on their Second Claim is denied and the Court *sua sponte* dismisses Plaintiffs' Second Claim.

## C.  Plaintiffs' Third Claim

Plaintiffs' complaint alleges a breach of contract claim against only Pacwest. Dkt. 1 at 5. The Court has entered default against Pacwest in this case. Dkt. 34. In Plaintiffs' motion for summary judgment, they appear to move on their Third Claim against Lupton. *See* Dkt. 37 at 19. Plaintiffs, however, may not add Lupton as an additional defendant to their Third Claim at the summary judgment stage. *See Wasco Prods. Inc. v. Southwall Tech., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("'[S]ummary judgment is not a procedural second chance to flesh out inadequate pleadings.'") (quoting *Fleming v. Lind-Waldock & Co.*, 922 F.2d 20, 24 (1st Cir. 1990)).

## D.  Lupton's Counterclaims

Lupton brings counterclaims for conversion and breach of contract against Garcia. Garcia moves for summary judgment against both counterclaims.

### 1.  Conversion

Lupton brings a counterclaim against Garcia alleging that Garcia took possession or control over tools belonging to Pacwest and did not return the tools, but instead kept them for his

PAGE 10 – OPINION AND ORDER

own use. Lupton additionally alleges that Garcia took bedding, towels, and other lodging items and intentionally damaged the housing that Pacwest provided him while he worked in Montana.

For Lupton's counterclaim of conversion to survive Plaintiffs' motion for summary judgment, "he must produce evidence that would enable a reasonable factfinder to find an 'intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.'" *McManus v. Auchincloss*, 271 Or. App. 765, 783 (2015) (quoting *Becker v. Pac. Forest Ind., Inc.*, 229 Or. App. 112, 116 (2009)). Lupton has presented no evidence in support of his conversion claim. Garcia has presented evidence that neither he nor any other Plaintiffs took any tool belonging to Pacwest, and that Garcia and the Plaintiffs did not damage any lodging that they stayed at while working on the construction project. Dkt. 38 ¶ 7. The Court considers these facts undisputed for purposes of this unopposed summary judgment motion. Fed. R. Civ. P. 56(e)(2). Accordingly, the Court grants Garcia's motion for summary judgment on Lupton's conversion claim.

### 2.  Breach of Contract

Lupton brings a counterclaim against Garcia alleging that Garcia breached the labor agreement by unexpectedly leaving the construction project without finishing the work, doing inferior work, and not providing documentation on the amount of monies he paid to the other employees. Lupton has presented no evidence that Garcia breached the labor agreement. Garcia, however, has presented evidence that Plaintiffs left the project because Lupton refused to pay them for the work they had already performed. "[A] breach or nonperformance of a promise by one party to a bilateral contract so material as to justify a refusal of the other party to perform a contractual duty, discharges that duty." *Wasserburger v. Am. Scientific Chem., Inc.*, 267 Or. 77, 82 (1973). Because Garcia has presented facts that Lupton refused to pay the employees, he has

PAGE 11 – OPINION AND ORDER

demonstrated that Lupton materially breached the labor agreement so as to justify Plaintiffs' refusal to continue working. Thus, Lupton's breach of contract counterclaim fails as a matter of law. The Court grants Plaintiffs' motion for summary judgment on Lupton's breach of contract counterclaim.

## CONCLUSION

Plaintiffs' motion for summary judgment (Dkt. 37) is GRANTED IN PART and DENIED IN PART. Plaintiffs' motion for summary judgment is granted with respect to Plaintiffs' First Claim under the Fair Labor Standards Act and Lupton's counterclaims of conversion and breach of contract. The Court has previously entered default against Pacwest Contracting LLC, the sole defendant in Plaintiffs' Third Claim. Plaintiffs' motion for summary judgment is denied with respect to their Second Claim under the Montana Wage Protection Act and this Claim is dismissed. Plaintiffs shall file a proposed form of Judgment within 14 days.

**IT IS SO ORDERED**.

DATED this 8th day of January, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge

PAGE 12 – OPINION AND ORDER