IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JOSE LUIS GARCIA et al.**,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>**PACWEST CONTRACTING LLC;<br>and LANCE LUPTON**,<br><br>　　　　　Defendants. | Case No. 3:12-cv-01930-SI<br><br>**OPINION AND ORDER** |

Jack Oswald and Virginia G. Mitchell, OSWALD & MITCHELL, 12100 S.W. Allen Boulevard, Beaverton, OR 97005. Of Attorneys for Plaintiffs.

Lance Lupton, 2338 Butterfield Trail, Bend, Oregon 97702. *Pro se*.

**Michael H. Simon, District Judge.**

　　　　Fifteen former employees ("Plaintiffs") bring this suit against their former employers, Pacwest Contracting LLC ("Pacwest") and Lance Lupton ("Lupton") for unpaid wages and breach of contract. The Court entered default against Pacwest on April 3, 2015 for failure to comply with the Court's June 30, 2014 Order requiring it to appear by counsel in this action. Before the Court is Plaintiffs' motion for entry of default judgment against Pacwest. For the reasons that follow, Plaintiffs' motion is granted.

PAGE 1 – OPINION AND ORDER

**STANDARDS**

A district court may order a default judgment to be entered against a party following the entry of default by the clerk of the court. Fed. R. Civ. P. 55(b)(2). Whether to grant a default judgment is within the discretion of the district court. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987) (per curiam) ("Rule 55 [of the Federal Rules of Civil Procedure] gives the court considerable leeway as to what it may require as a prerequisite to the entry of a default judgment."). In exercising its discretion, the district court may consider factors including: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Upon entry of default, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo*, 826 F.2d at 917-18 (quotation marks omitted). "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

**BACKGROUND**

**A. Factual Background**

Pacwest is a construction company with its principal place of business in Bend, Oregon. Lupton and Justin Goodman ("Goodman")[1] managed the operations of Pacwest. In December

---

[1] Plaintiffs' complaint names Goodman as a Defendant. Dkt. 1. Plaintiffs did not file a proof of service on Goodman. Accordingly, in the Court's January 8, 2016 Opinion and Order, the Court dismissed Plaintiffs' claims against Goodman without prejudice pursuant to Federal Rule of Civil Procedure 4(m). Dkt. 40 at 1.

2011,[2] Defendants hired Garcia to work on the construction of a hotel in Glendive, Montana.[3] Defendants instructed Garcia to hire additional employees on behalf of Defendants to help Garcia with construction. Garcia hired the remaining Plaintiffs, all of whom were approved as employees by Defendants. Lupton negotiated and finalized a labor agreement with Plaintiffs. Before Plaintiffs began construction, Lupton gave Garcia a check for approximately $7,640 to pay Plaintiffs initially, and Garcia then divided the check among Plaintiffs.[4] Plaintiffs were to have hourly wages that varied from $14.00 to $25.00.[5] Lupton agreed that Plaintiffs would use Garcia's tools for construction and in return, Lupton would pay Garcia a monthly rental fee.

At the beginning of their third week of work, Plaintiffs made their first request for payment of wages. Garcia give a list of each Plaintiff's hours worked to Goodman, who served as the on-site supervisor and monitored Plaintiffs' work and time. Goodman told Garcia he would give that information to Lupton, who served as the long-distance manager of the

---

[2] Garcia's declaration states that he was hired in late December 2012. Dkt. 38 ¶ 2. Plaintiffs' records, however, demonstrate that they worked on the construction project in Montana in January 2012. Dkt. 38 at 5-19. Additionally, the complaint in this case was filed in October 2012. Dkt. 1. Thus, the Court considers Garcia's statement that he was hired in late December 2012 to be a scrivener's error.

[3] Plaintiffs do not specify whether Lupton, Goodman, or Pacwest was responsible for hiring Garcia. *See* Dkt. 38 ¶ 2 (Declaration of Jose Luis Garcia) ("I was hired by defendants to work on defendants' project constructing the Astoria Hotel in Glendive, Montana.").

[4] The check was divided as follows: Jose Luis Garcia, $0.00; Carlos Vasquez, $700.00; Julio Garfias, $600.00; Gullibaldo Garfias, $650.00; Francisco Real, $200.00; Oriale Bernal, $400.00; Julio Frutos, $600.00; Oscar Cornejo, $620.00; Jesus Enrique Lopez, $520.00; Ricardo Hernandez, $400.00; Josaphat Sanchez, $700.00; Pedro Molina, $700.00; Christian Ramirez, $400.00; Hugo Molina, $500.00; and Oliverio Cuenca, $650.00. Dkt. 38 ¶ 3.

[5] The hourly wages were as follows: Jose Luis Garcia, $25.00; Carlos Vasquez, $16.00; Julio Garfias, $16.00; Gullibaldo Garfias, $20.00; Francisco Real, $16.00; Oriale Bernal, $20.00; Julio Frutos, $16.00; Oscar Cornejo, $20.00; Jesus Enrique Lopez, $18.00; Ricardo Hernandez, $20.00; Josaphat Sanchez, $16.00; Pedro Molina, $18.00; Christian Ramirez, $18.00; Hugo Molina, $16.00; and Oliverio Cuenca, $14.00. Dkt. 38 ¶ 2.

construction project. A day or two later, Garcia spoke with Lupton on the phone and told Lupton that the workers still needed to get paid. Lupton told Garcia that the funds would not be available for a few days. Garcia called Lupton two or three days later, and Lupton told him that the funds were still not available and that he could not pay them yet. Garcia called Lupton a third time a day or two after that, and Lupton told Garcia to wait one more day. Lupton deposited $100 into Garcia's bank account to pay for food for Plaintiffs. At this time, Plaintiffs got word that Pacwest was not going to be paid for the construction job. It is unclear in the record from whom Plaintiffs received this information. Plaintiffs decided to stop working because they were not being paid and went home.[6] Garcia never received payment from Lupton for the tool rentals.[7]

## B. Procedural History

On October 26, 2012, Plaintiffs filed the complaint in this case, alleging three claims for relief: (1) failure to pay wages, in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("the FLSA"), against all Defendants, on behalf of all Plaintiffs ("First Claim"); (2) failure to pay wages, in violation of the Montana Wage Protection Act, Mont. Code Ann. § 39-3-101, *et seq.*, against all Defendants, on behalf of all Plaintiffs ("Second Claim"); and (3) breach of contract against Pacwest, on behalf of Garcia ("Third Claim"). Dkt. 1. In the

---

[6] By the time Plaintiffs stopped working, each Plaintiff had worked the following total hours: Jose Luis Garcia, 144 hours, including 42 hours of overtime; Carlos Vasquez, 88 hours, including 24.5 hours of overtime; Julio Garfias, 135.2 hours, including 32.8 hours of overtime; Gullibaldo Garfias, 137.5 hours, including 35 hours of overtime; Francisco Real, 135 hours, including 32.5 hours of overtime; Oriale Bernal, 111.5 hours, including 9 hours of overtime; Julio Frutos, 145 hours, including 33 hours of overtime; Oscar Cornejo, 137.5 hours, including 35 hours of overtime; Jesus Enrique Lopez, 140.5 hours, including 28.5 hours of overtime; Ricardo Hernandez, 111.5 hours, including 17.5 hours of overtime; Josaphat Sanchez, 129.5 hours, including 26.5 hours of overtime; Pedro Molina, 135.5 hours, including 33 hours of overtime; Christian Ramirez, 121 hours, including 17.5 hours of overtime; Hugo Molina, 125 hours, including 22.5 hours of overtime; and Oliverio Cuenca, 135.5 hours, including 33 hours of overtime. Dkt. 38 ¶ 5.

[7] The total rental fee was $1,060.00. Dkt. 38 ¶ 6.

amended answer, Pacwest and Lupton alleged two counterclaims against Garcia for conversion and breach of contract.

On May 21, 2014, the Court granted Pacwest and Lupton's motion to withdraw or substitute an attorney. Dkt. 26. On June 30, 2014, the Court held a status conference during which Lupton appeared *pro se* for both himself and Pacwest. Dkt. 30. The Court ordered Lupton to find counsel to represent Pacwest by July 30, 2014. *Id.* Lupton did not do so. On April 3, 2015, Plaintiffs moved for an entry of default against Pacwest for failure to comply with the Court's June 30, 2014 Order, which the Court granted. Dkts. 31, 34.

On October 19, 2015, with Lupton as the only remaining defendant, Plaintiffs moved for summary judgment on all claims. Dkt. 37. Lupton did not respond to Plaintiffs' motion for summary judgment. On January 8, 2016, the Court granted in part and denied in part Plaintiffs' motion. Dkt. 40. The Court granted Plaintiffs' motion with respect to their First Claim under the FLSA and Lupton's counterclaims. The Court denied Plaintiffs' motion with respect to their Second Claim under the Montana Wage Protection Act and dismissed this Claim as barred by the applicable statute of limitations. The Court noted that it had already entered default against Pacwest, the sole defendant in Garcia's Third Claim. On January 21, 2016, Plaintiffs filed their present motion for default judgment against Pacwest. Dkt. 42.

## DISCUSSION

### A. Procedural Requirements

Plaintiffs have satisfied the procedural requirements for entry of a default judgment under Federal Rules of Civil Procedure 54(c) and 55(a). The clerk of the court properly entered default against Pacwest under Rule 55(a), and Plaintiffs' motion complies with Rule 54(c), as it requests a remedy that does not differ in kind from, or exceed in amount, the remedy pled in the

complaint. Thus, the Court may exercise its discretion and order the entry of a default judgment against Pacwest upon consideration of the *Eitel* factors, outlined below.

## B. *Eitel* Factors

### 1. Prejudice to the plaintiff

The first *Eitel* factor is the possibility of prejudice to the plaintiff. *Eitel*, 782 F.2d at 1471. The Court finds that this factor weighs in favor of granting Plaintiffs' motion, as Plaintiffs have no alternative means by which to resolve their present claims against Pacwest. *See Minnesota Life Ins. Co. v. Gomez*, 2015 WL 4638351, at *4 (D. Ariz. Aug. 4, 2015) (finding that a plaintiff would be prejudiced if a default judgment were not entered because the plaintiff had no alternative means by which to resolve its potential claim).

### 2. Substantive merits and sufficiency of the complaint

The second and third *Eitel* factors are the merits of the plaintiff's substantive claims and the sufficiency of the complaint. *Eitel*, 782 F.2d at 1471. The Ninth Circuit has suggested that these factors require that a plaintiff's allegations "state a claim on which the [plaintiff] may recover." *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). The Court has already found that Plaintiffs are entitled to summary judgment in their favor on their First Claim under the FLSA against Lupton. As Pacwest was Lupton's employer at all relevant times, the Court finds that Plaintiffs' First Claim under the FLSA properly is stated against Pacwest.

Garcia's Third Claim alleges breach of contract against Pacwest. The Oregon Supreme Court has stated that "an offer containing a promise for a consideration to do an act which a person has a lawful right to do, made by one person to another, followed by an unqualified and unequivocal acceptance by the person to whom it is made . . . creates a contract." *C.R. Shaw Wholesale Co. v. Hackbarth*, 102 Or. 80, 94 (1921). Garcia alleges that Pacwest promised to pay a rental fee to Garcia for tools Garcia purchased and used on the construction project. Garcia

PAGE 6 – OPINION AND ORDER

accepted this offer. The rental fee totaled $1,060.00. Garcia requested that Pacwest reimburse him as promised, but Pacwest failed to do so. Accordingly, the Court finds that Garcia has properly stated a claim for breach of contract against Pacwest. Thus, this factor weighs in favor of granting Plaintiffs' motion.

### 3. Sum of money at stake

The fourth *Eitel* factor is the sum of money at stake in the action. *Eitel*, 782 F.2d at 1471. Under this factor, a court considers the sum of money "in relation to the seriousness of [the defendant's] conduct." *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Here, Plaintiffs seek a total of $15,798.56 in unpaid wages and liquidated damages under the FLSA against Lupton and Pacwest in their First Claim. Dkt. 44 at 2-3. Garcia seeks an additional $1,060.00 against Pacwest in his Third Claim. Plaintiffs allege that Pacwest failed to pay them wages in violation of federal law, and Garcia additionally alleges that Pacwest breached its contract with him. The Court finds that in relation to the seriousness of this alleged conduct, the sum of money at stake in this action does not weigh against granting Plaintiffs' motion for default judgment. *Cf. Eitel*, 782 F.2d at 1472 (finding that the district court did not abuse its discretion in denying a motion for default judgment where the plaintiff sought nearly $3 million in damages from the defendant).

### 4. Material facts in dispute

The fifth *Eitel* factor is the possibility of a dispute concerning material facts. *Eitel*, 782 F.2d at 1471-72. Upon entry of default, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Televideo*, 826 F.2d at 917-18 (quotation marks omitted). As discussed above, Plaintiffs have alleged facts necessary to establish their First and Third Claims. Plaintiffs' "presumptively accurate factual allegations leave little room for dispute." *Kloepping v. Fireman's Fund*, 1996 WL 75314, at *3 (N.D. Cal.

PAGE 7 – OPINION AND ORDER

Feb. 13, 1996). In addition, Plaintiffs have presented evidence regarding the amount of damages allegedly due under each of their First and Third Claims. Dkt. 38. "Accordingly, no genuine dispute of material facts would preclude granting Plaintiffs' motion." *PepsiCo*, 238 F. Supp. 2d at 1177. Thus, this factor weighs in favor of granting Plaintiffs' motion.

### 5. Excusable neglect

The sixth *Eitel* factor is whether the default was due to excusable neglect. *Eitel*, 782 F.2d at 1472. Pacwest was served with a summons and the complaint, which it answered through counsel. After Pacwest and Lupton's counsel withdrew, however, Pacwest failed to obtain new counsel, thus violating the Court's June 30, 2014 Order. Plaintiffs waited nearly a year before moving for an entry of default against Pacwest. Given the length of time that Pacwest has had to find and appear through counsel, the Court finds that the possibility of excusable neglect is remote. Thus, this factor weighs in favor of granting Plaintiffs' motion.

### 6. Policy favoring decisions on the merits

The seventh *Eitel* factor is the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel*, 782 F.2d at 1472. Although "cases should be decided upon their merits whenever reasonably possible," *id.*, "the mere existence of Fed. R. Civ. P. 55(b) indicates that 'this preference, standing alone, is not dispositive.'" *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 (quoting *Kloepping*, 1996 WL 75314, at *3). "Thus, the preference to decide cases on the merits does not preclude a court from granting default judgment." *Kloepping*, 1996 WL 75314, at *3. Here, Pacwest's failure to defend against Plaintiffs' claims makes a decision on the merits impossible. Accordingly, the policy favoring decision on the merits does not preclude the Court from entering a default judgment against Pacwest. *See PepsiCo*, 238 F. Supp. 2d at 1177.

The Court finds that the majority of the *Eitel* factors weigh in favor of the entry of default judgment against Pacwest. Accordingly, the Court grants Plaintiffs' motion.

## CONCLUSION

The Court GRANTS Plaintiffs' motion for entry of default judgment against Defendant Pacwest Contracting LLC (Dkt. 42) on Plaintiffs' First Claim under the Fair Labor Standards Act and Plaintiff Jose Luis Garcia's Third Claim for breach of contract.

**IT IS SO ORDERED.**

DATED this 9th day of February, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge